## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**HENRY LUWISCH**                               **CIVIL ACTION NO. 2:17-cv-03241**

**VERSUS**                                      **SECTION "E"**

**AMERICAN MARINE CORPORATION**                 **MAGISTRATE (5)**

                                                **Designated as Rule 9(h)**


## MOTION FOR PARTIAL SUMMARY JUDGMENT BROUGHT BY AMERICAN MARINE CORPORATION

**NOW INTO COURT**, through undersigned counsel, comes defendant American Marine Corporation ("AMC"), which moves this Honorable Court for an Order dismissing plaintiff's claims for maintenance and cure pursuant to the doctrine set forth in *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968).

As explained by Judge Zainey in *Wheeler v. Transocean Offshore, U.S.A. Inc.*, 2017 WL 4402433 (E.D. La. 10/02/17), and Judge Africk in *Collins v. Cenac Marine Services, LLC et al*, 2017 WL 5625873 (E.D. La. 11/22/17), to prevail on the *McCorpen* defense, "an employer must show that:

(1)     The claimant intentionally misrepresented or concealed material facts;

(2)     The non-disclosed facts were material to the employer's decision to hire the claimant; and

(3)     A connection exists between the withheld information and the injury complained of in the lawsuit.

Citing *Brown v. Parker Drilling Offshore Corp.*, 401 F.3d 166 (5th Cir. 2005), citing *McCorpen* 396 F.2d at 548-49.

AMC is owner of the oceangoing tug M/V AMERICAN CHALLENGER.   (*See* photo below, Exhibit "1").



Plaintiff claims in his Complaint that on November 2, 2014 he sustained injury to his cervical spine when he fell from the top deck to the second deck of the M/V AMERICAN CHALLENGER while employed by AMC and serving in his capacity as Chief Engineer.

Following his fall plaintiff was paid maintenance and cure. He continues to receive maintenance and cure at this time.

After his lawsuit was filed undersigned counsel began its investigation in to plaintiff's fall, his medical history and employment history.  That investigation has led to plaintiff's medical records of injury and treatment prior to his employment with AMC, which, coupled with plaintiff's records of his pre-employment physical, his employment

application, his post fall medical records, and, above all, plaintiff's deposition testimony, demonstrate that plaintiff, pursuant to *McCorpen* and its progeny, has forfeited his right to maintenance and cure.

It is based on this uncontroverted evidence that AMC brings its Motion and asks that the Court dismiss plaintiff's claim for maintenance and cure and find that plaintiff has forfeited his right to those benefits.

THE FACTS

On January 12, 2012, plaintiff applied to work as Chief Engineer with AMC. Plaintiff is an experienced seaman/Chief Engineer licensed by the U.S. Coast Guard. *See* plaintiff's Merchant Mariner Credential attached as Exhibit "2".  He has worked for various companies as Chief Engineer aboard a variety of vessels since at least 1995. *See* plaintiff's Application for Employment, Exhibit "3".

As part of his application AMC required plaintiff to undergo a pre-employment physical.  On January 19, 2012 plaintiff had his pre-employment at Boones Creek Medical Clinic.  *See* pre-employment physical report, Exhibit "4".

When asked about his **Past Medical** plaintiff stated that he had a history of testicular cancer.

Plaintiff did not disclose to the physician's assistant who conducted the physical that he had a history of neck injury and pain and had been previously diagnosed with advanced degenerative disc disease of the cervical spine and probable nerve root compression at C4-5 and C5-6, and herniated disc with spinal cord compression at C6-7.

In fact, at no time during the application process or employment with AMC did plaintiff disclose to anyone his history of injury to his neck/cervical spine and diagnosis of advanced cervical degenerative disc disease.   *See* DECLARATION of Robert Shahnazarian, President, American Marine Corporation, Exhibit "5".

Based on information available to AMC it hired plaintiff as Chief Engineer on January 26, 2012.

The following are the facts that plaintiff did not disclose to AMC:

PLAINTIFF'S HISTORY OF NECK INJURY/PAIN AND

ADVANCED CERVICAL DEGENERATIVE DISEASE

First Accident

In fact on May 21, 2008, plaintiff was riding a four wheel all-terrain vehicle (ATV) on a public road.  He swerved to avoid a turtle and lost control. He was thrown from the vehicle, knocked unconscious, and sustained injuries to his head, face, neck, right shoulder, arm, wrist, and knee. He was taken by ambulance to St. Tammany Parish Hospital.  *See* records from St. Tammany Parish Hospital, Exhibit "6".

CT scan of his head showed that he sustained a fractured skull and subarachnoid hemorrhage of his brain.  CT scan of his cervical spine demonstrated he was suffering from **degenerative disc disease at C4-5 and C5-6**.  *See* report of cervical CT scan, May 21, 2008 attached as Exhibit "7".  Due to the severity of his injuries he was transferred later that day to Our Lady of the Lake Hospital in Baton Rouge, Louisiana for further treatment.

Second Accident

On October 29, 2011, plaintiff was employed by Dale Martin Offshore/Lafayette Crew Boats as a Chief Engineer.  On that date he injured his neck and left shoulder when he was pulling on a pipe wrench it slipped, causing him to fall into a bulkhead on a ship.  Because his neck and shoulder pain did not improve, three days later on November 1, 2011 plaintiff went to Business Health Partners, An Occupational Medicine Clinic.  *See* records of Business Health Clinic, Dr. Bonnie Drumwright attached as Exhibit "8".

Dr. Drumwright ordered X-rays of plaintiff's cervical spine. These X-rays demonstrated that plaintiff was suffering from serious degenerative disc disease at C4-5 and C5-6.  The radiologist wrote, "The C4-5 and C5-6 disc spaces demonstrate significant disc space narrowing, endplate sclerosis, and anterior spurring with posterior spondylosis."  His impression was, **"Advanced degenerative disc disease at C4-5 and C5-6."**  *See* X-ray report of Dr. Jeffrey Laborde, November 1, 2011, attached as Exhibit "9".

Dr. Drumwright diagnosed plaintiff with cervical radiculopathy, prescribed medication and told plaintiff "Follow up in 2 weeks in Lafayette or Houma area. May need MRI."

On November 14, 2011, plaintiff went to MedXcel Urgent Care Clinic in Broussard, Louisiana.  There he was examined by Chris Hindelang, PA-C.  Plaintiff told him that he fell backward hitting his head and neck on a wall two weeks ago and was complaining of neck pain.  He was given pain medication and a cervical MRI was ordered.  *See* records of MedXcel, Exhibit "10".

The cervical MRI was done November 14, 2011.  **The MRI showed**:

- C4-5 = "Significant bilateral stenosis. Probable compromise of both C5 nerve roots.   The disc space demonstrates desiccation and loss of volume indicating long standing degenerative disc disease."

- C5-6 = "Positive small central and left lateral spondylosis, cord compression.   Significant disc space narrowing with reactive bone formations surrounding the endplates and anterior spurring.   Moderate bilateral foraminal stenosis and possible compromise of both C6 nerve roots.

- C6-7 = Central and left lateral disc herniation.  Well-defined protruding disc fragment extending into left lateral spinal canal posteriorly displacing and compressing the left lateral aspect of the cord by 10% and extending into the left neural foramina, creating left foraminal stenosis and probable C7 nerve root compromise.

*See* Cervical MRI report, Imaging at Lafayette Surgical Specialty Hospital, Exhibit "11".

On December 1, 2012, he returned to MedXcel for a follow-up exam and for refill of his prescription of pain medicine.

Six weeks later plaintiff submitted his job Application to AMC and underwent his pre-employment physical at Boones Creek Medical.

When plaintiff underwent his pre-employment physical he did not disclose his history of neck injury and pain from the two prior accidents or his diagnosis of significant degenerative disc disease, probable nerve root compromise, herniated disc and spinal cord compression. *See* Exhibit "4", pre-employment physical.

Robert Shahnazarian, President of AMC, interviewed plaintiff as part of his application process.  At no time did plaintiff disclose to him or anyone else with his history of neck injury, significant disc disease, herniated disc, or spinal cord compression.  *See* DECLARATION of Mr. Shahnazarian, Exhibit "5".

Because plaintiff did not disclose his neck injuries or preexisting advanced degenerative disc disease and herniated during his physical or to anyone at AMC, AMC hired him without any understanding of his true medical condition.  Due to plaintiff's failure to disclose his true medical history AMC was deprived of its right to investigate the condition of his cervical spine and make an informed decision if plaintiff was physically suitable for his job without being at risk of injury or re-injury.

Mr. Shahnazarian has declared that had plaintiff disclosed his true medical history and physical condition AMC would not have hired him.  *See* DECLARATION, Exhibit "5".

### PLAINTIFF'S POST-ACCIDENT MEDICAL TREATMENT

1)      Springhill Medical Center, Mobile, Alabama.

Plaintiff was taken there November 2, 2014, the morning he fell.  He complained of neck and right shoulder pain.  The cervical CT scan done that morning showed the same extensive degenerative disc disease at C4-5 and C5-6 that showed up on the studies done before he applied to work for AMC.  *See* records of Springhill Medical Center attached as Exhibit "12".  *See* report of cervical CT scan, November 2, 2014, attached as Exhibit "13".

2)      Dr. William Alden, Westbank Physicians Rehab, Marrero, Louisiana.

Plaintiff was sent by his attorney to Dr. Alden on December 4, 2014.  Plaintiff complained of neck and right shoulder pain.  Plaintiff did not disclose to Dr. Alden his history of cervical injury, pain or degenerative disc disease.  *See* plaintiff's INITIAL OFFICE VISIT form completed December 4, 2014, and Dr. Alden's initial report in which he wrote, "Plaintiff does not report being in any previous accidents." *See* Exhibit "14".

Dr. Alden ordered a cervical MRI which was done February 13, 2015.  This study shows the same extensive and advanced degenerative disc disease present at C4-5, C5-6 that preexisted plaintiff's employment with AMC, as well as at the adjacent levels of his cervical spine.  It shows the same herniation at C6-7.  *See* February 13, 2015 report of Dr. Lawrence Glorioso, Stand-Up-Open MRI Centers of Louisiana, attached as Exhibit "15".

3)      Dr. Bradley Bartholomew, Neurosurgeon.

Plaintiff was sent by his attorney to Dr. Bartholomew on October 22, 2015.  Dr. Bartholomew was provided the records and radiology studies from Springhill Medical Center and Dr. Alden.  As he had with everyone else, plaintiff did not disclose to Dr. Bartholomew his true medical history.  Dr. Bartholomew wrote in his report of October 22, 2015, "He denies any past medical issues regarding his neck."  *See* report of Dr. Bartholomew, October 22, 2015 attached as Exhibit "16".

Dr. Bartholomew reviewed the radiology reports and examined plaintiff.  He noted and agreed with the doctors that the post-accident cervical CT scan and MRI demonstrated significant degenerative disc disease at C4-5, C5-6 and the adjacent levels.

He then wrote in his report,

> "From the history given to me, I relate the patient's complaints to the injury of 11/02/2014. **He obviously had a preexisting condition of degenerative disc disease in the cervical spine. I discussed with him different options. One of these attacks likely would be to continue with followup. The other would be possible surgery. We even discussed possible steroid injections. I discussed if we do surgery, one option is we would do 3 levels as all 3 levels are affected by degenerative change, and this may be a 3 level fusion, but likely is would recommend a fusion at C5-6 and C6-7 with artificial disc at C4-5 to keep some motion. The other option may be I would just do an artificial disk at C6-7 where I believe the majority of the symptoms are coming from based on his MRI, and also the numbness is more in that distribution. I would recommend an artificial disk to stop increased stress at C5-6."**

It is uncontroverted that the degenerated cervical discs and vertebrae that Dr. Bartholomew recommends operating on and fusing and  are the same exact discs that were diagnosed as being in an advanced state of degeneration with probable nerve root compromise, herniation and spinal cord compression a mere eight weeks before he applied to work for AMC.

THE <em>McCORPEN</em> CRITERIA ARE MET

The evidence shows that:

(1)    When plaintiff applied to work with AMC he did not disclose his true medical condition.

(2)     Because plaintiff was not forthright with AMC and did not disclose his true medical condition, it has been prejudiced.  AMC spends considerable time and resources to vet all job applicants to make sure they are physically fit to carry out their assigned duties without concern they may be injured or reinjured.  The physical condition of each job applicant is important information and a material factor in AMC's deliberation to hire or not.  This was true with plaintiff.  By his silence plaintiff deprived AMC of information material to its decision to hire plaintiff.

(3)     It is uncontroverted that the concealed or withheld condition is the same as or substantially similar to the injury complained of in the lawsuit.  In fact, it is identical.

4)     There is no evidence that challenges the above statements of fact.

Pursuant to *McCorpen v. Central Gulf S.S. Corp*, *supra*, the cases that follow it, and for the reasons found in AMC's Memorandum in Support, AMC asks that plaintiff's claim for maintenance and cure  be dismissed and  found that AMC is not liable to him to pay maintenance and cure.

Respectfully submitted;


/s/ Wilton E. Bland, III
WILTON E. BLAND, III (#3123)
ADAM P. SANDERSON (#31312)
TREVOR M. CUTAIAR (#33082)
MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC
701 Poydras Street, Suite 4250
New Orleans, Louisiana 70139
Telephone:  (504) 595-3000
Facsimile:  (504) 522-2121
Email:       wbland@mblb.com
             asanderson@mblb.com
             tcutaiar@mblb.com

*Attorneys for American Marine Corporation*


## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

/s/ Wilton E. Bland, III