UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HENRY LUWISCH,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-3241** |
| **AMERICAN MARINE CORPORATION,**<br>    Defendant | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is Defendant American Marine Corporation's motion *in limine* to exclude or limit the testimony of defense witness Glenn Hebert, a purported expert in vocational rehabilitation.[1] The motion is opposed.[2]

## BACKGROUND

Plaintiff Henry Luwisch alleges that on November 2, 2014, while performing an inspection of the upper deck of the M/V AMERICAN CHALLENGER, he tripped on an improperly stowed rope and/or board and fell approximately ten feet to the deck below.[3] As a result of the fall, Luwisch alleges he sustained injuries to his right shoulder and arm, neck, and head.[4] Luwisch brings claims of Jones Act negligence, unseaworthiness, and maintenance and cure.

The present motion seeks to exclude or limit the testimony of Plaintiff's expert witness Glenn M. Hebert, MRC.[5] Defendant American Marine Corporation ("AMC") argues Hebert's opinions fail to satisfy the requirements of *Daubert v. Merrell Dow*

---

[1] R. Doc. 29.
[2] R. Doc. 33.
[3] R. Doc. 1 at 2.
[4] R. Doc. 3.
[5] R. Doc.

1

*Pharmaceuticals*. First, AMC argues Hebert should not be allowed to offer opinions or testimony regarding Luwisch's medical treatment.[6] Second, AMC challenges Hebert's opinions regarding Luwisch's earning capacity.[7] Third, AMC asserts the underlying data relied upon for Hebert's opinion on the long-term economic effects of disability are flawed and unreliable.[8] Fourth, AMC contends Hebert's opinions regarding vocational rehabilitation are lacking in support.[9]

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[10]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[11] provides the analytical framework for determining whether expert testimony is admissible under Rule 702.

Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether expert testimony is both relevant and reliable.[12] The party offering

---

[6] R. Doc. 29-1 at 4.
[7] *Id.* at 4-5.
[8] *Id.* at 6-11.
[9] *Id.* at 11-13.
[10] FED. R. EVID. 702.
[11] 509 U.S. 579 (1993).
[12] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).

2

the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[13]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[14] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[15] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[16]

The Supreme Court has cautioned that the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[17] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[18] The district court is offered broad latitude in making expert testimony determinations.[19]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the

---

[13] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[14] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007*). See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[15] *Daubert*, 509 U.S. at 592–96.
[16] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[17] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[18] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[19] *See, e.g.*, *Kumho Tire*, 526 U.S. at 151–53.

finder of fact.[20] "Unless wholly unreliable, the data on which the expert relies goes to the weight and not the admissibility of the expert opinion."[21] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[22] The Court is not concerned with whether the opinion is correct but whether the preponderance of the evidence establishes that the opinion is reliable.[23] "It is the role of the adversarial system, not the court, to highlight weak evidence."[24]

## ANALYSIS

### I. Medical Treatment

AMC first objects to the section of Hebert's expert report that contains a discussion of Luwisch's medical history.[25] AMC asserts Hebert should not be permitted to offer opinions or testimony regarding Luwisch's medical treatment or prognosis, as he is not a medical doctor.

The Court agrees. Hebert will not be allowed to testify as to Luwisch's medical condition, medical causation, prognosis, or history of treatment. As Luwisch notes in his opposition, Hebert shall "properly defe[r] to Luwisch's treating physicians with respect to these issues."[26]

---

[20] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[21] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[22] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[23] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[24] *Primrose*, 382 F.3d at 562.
[25] R. Doc. 29-1 at 4.
[26] R. Doc. 33 at 3.

## II. Work-Life Expectancy

In his expert report, Hebert opines that Luwisch's participation in the labor force was reduced by 5.4 to 5.5 years as a result of his disability.[27] Hebert relies on the Gamboa Gibson Worklife Tables, which are created using census data from the Current Population Survey and the American Community Survey.[28] AMC asks the Court to exclude Hebert's opinions on the grounds that the data underlying the Gamboa Gibson Worklife Tables are flawed and unreliable.[29] AMC points to a recent decision in this district by Judge Vance excluding a similar opinion by Hebert on the basis that, although the Gamboa Gibson data indicate that a disability may significantly reduce both earnings and workplace expectancy, "Hebert does not explain how plaintiff's particular disability is likely to affect his individual work-life expectancy."[30] Judge Vance continued, "[e]ven assuming that the Gamboa Gibson tables accurately reflect the average work-life expectancy of disabled versus non-disabled populations, plaintiff fails to show that these tables can reliably predict the future work-life-expectancy of a specific person."[31]

In this case, Hebert quotes the Gamboa Gibson study for the proposition that "[d]isability significantly reduces both earnings and worklife expectancy," and then concludes that Luwisch's disability has reduced his worklife by 5.4 to 5.5 years.[32] Hebert utterly fails to justify how the Gamboa Gibson data support this conclusion, however.

---

[27] R. Doc. 29-3 at 10-11.
[28] R. Doc. 29-1 at 7-8.
[29] R. Doc. 29-3 at 10-11.
[30] *Noel v. Inland Dredging Company*, LLC, 2018 WL 1911821 (E.D. La. Apr. 23, 2018).
[31] *Id*. at *2 (citing *Lackey v. Robert Bosch Tool Corp*., No. 16-29, 2017 WL 129891, at *10 (E.D. Ky. 2017)).
[32] R. Doc. 29-3 at 10-11.

5

Accordingly, the Court finds that Hebert's opinion as to Luwisch's work-life expectancy is unreliable and therefore inadmissible.

### III. Other Opinions

Hebert offers the following opinions related to Luwisch's earning capacity and vocational rehabilitation: (1) Luwisch's past occupations would be classified as heavy, semi-skilled, and skilled work; (2) "heavy" is defined as the exertion of 50-100 pounds of force occasionally, and/or 25-50 pounds of force frequently, and/or 10-20 pounds of force constantly to move objects; (3) Luwisch has skills which he should be able to transfer to lighter occupations in the future; (4) Plaintiff will be able to do light-to-medium work upon reaching maximum medical improvement; (5) Luwisch has the mechanical skills to afford him the opportunity to work in other types of occupations which do not require the physical exertion of a chief engineer; (6) if Luwisch can perform light-to-medium work, he can re-enter the labor market in his geographical area earning approximately $18 per hour; and (7) Luwisch may be able to perform the work of a bench repair worker, small engine repairman, power equipment repairman, sales clerk, inventory clerk, or supply clerk; and (8) Luwisch's work-life expectancy has been reduced by 5.4 to 5.5 years. AMC challenges these opinions as lacking support, context, or explanation.[33]

This case is scheduled for a bench trial and therefore the need for pre-trial rulings on admissibility of evidence is significantly reduced.[34] "*Daubert* requires a binary choice—admit or exclude—and a judge in a bench trial should have discretion to admit

---

[33] *See* R. Doc. 29-3 at 3, 10.
[34] *See United States v. Cardenas*, 9 F.3d 1139, 1154 (5th Cir. 1993); *Government of the Canal Zone v. Jimenez G.*, 580 F.2d 897, 897 (5th Cir. 1978).

questionable . . . evidence, though of course [she] must not give it more weight than it deserves."[35] Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[36] AMC's motion in limine is therefore **DENIED** with respect to Opinions #1-7. As noted above, the motion is **GRANTED** as to Opinion #8.

## CONCLUSION

Accordingly;

**IT IS ORDERED** that Defendant American Marine Corporation's motion in limine is hereby **GRANTED IN PART** and **DENIED IN PART**. Hebert will not be permitted to offer opinions regarding the Plaintiff's medical treatment or prognosis, nor will he be permitted to offer his opinion of Plaintiff's reduced work-life expectancy. He will be permitted to testify as to the other opinions represented in his expert report, provided those opinions are adequately supported at trial.

New Orleans, Louisiana, this 18th day of June, 2018.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[35] *Thompson v. Rowan Cos.*, 2008 WL 724646, at *1 (E.D. La. 2007).
[36] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).